UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KEITH GIBBS,

                    Plaintiff,

                                                    **Hon. Hugh B. Scott**

        v.                                          **18CV1138**

                                                    **CONSENT**

ANDREW SAUL, COMMISSIONER,                          **Order**

                    Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings
(Docket Nos. 8 (plaintiff), 15 (defendant Commissioner)).   Having considered the
Administrative Record, filed as Docket No. 6 (references noted as "[R. __]"), and the papers of
both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination
of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled
to disability insurance benefits and/or Supplemental Security Income benefits.   The parties
consented to proceed before a Magistrate Judge (Docket No. 16, reassignment Order of Oct. 4,
2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Keith Gibbs" or "plaintiff") filed an application for disability insurance
benefits on August 7, 2014 [R. 25].   That application was denied initially.   The plaintiff

appeared before an Administrative Law Judge ("ALJ"), who considered the case <u>de novo</u> and concluded, in a written decision dated May 18, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act.   The ALJ's decision became the final decision of the Commissioner on August 21, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on October 16, 2018 (Docket No. 1).   The parties moved for judgment on the pleadings (Docket Nos. 8, 15), and plaintiff duly replied (Docket No. 19). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 45-year-old with a limited education, last worked as a bus driver for the Niagara Frontier Transit Authority [R. 36, 931].   He contends that he was disabled as of the onset date of December 20, 2013, following a motor vehicle accident [R. 25, 931].   Plaintiff claims the following impairments deemed severe by the ALJ:   degenerative disc disease in cervical, thoracic, and lumbar spine with disc herniation, status post cervical fusion with instrumentation; right shoulder rotator cuff tear and impingement syndrome, status post right rotator cuff repair, bilateral carpel tunnel syndrome, status post bilateral carpel tunnel releases, right cubital tunnel syndrome, and obesity [R. 27].   As for plaintiff's obesity, he is 6'1" tall, and weighed 228 pounds [R. 30, 33, 202, 933], 219 pounds at Oct. 6, 2014, consultative examination [R. 33, 35, 993] and had a body mass index (BMI) of 30.5 [R. 35].

## MEDICAL AND VOCATIONAL EVIDENCE

At issue is the consideration of the medical opinion of treating physician Dr. Michael Calabrese's opinions, specifically his opinion of February 22, 2017 [R. 1888-91], as contrasts earlier opinions.   In chronological order, on February 15, 2016, Dr. Calabrese saw plaintiff as follow up from a December 2013 motor vehicle accident [R. 1265].   After summarizing prior diagnostic testing and other doctors' assessments [R. 1265-66, 1269-74] in a pattern repeated in subsequent notes, Dr. Calabrese noted limited range of motion in plaintiff's back with pain [R. 1267, 1268].   As for work restrictions, Dr. Calabrese stated that "at this time, the patient may return to sedentary work with the understanding that he has upcoming left arm surgery on 02/18/2016.   Following this surgery that is unrelated to his No Fault case, the patient will be out of work" [R. 1275].

On March 15, 2016 [R. 1254], plaintiff was seen by Dr. Calabrese for further follow up and stated that plaintiff's work restrictions were that he was "able to perform sedentary work with the understanding that he has just had left arm surgery, again, unrelated" to his motor vehicle accident case [R. 1264] (see also Docket No. 8, Pl. Memo. at 22; Docket No. 15, Def. Memo. at 8).   On July 7, 2016 [R. 1218], plaintiff saw Dr. Calabrese and the doctor continued to find that he could perform sedentary work [R. 1228] (see Docket No. 15, Def. Memo. at 8).   On August 18, 2016 [R. 1206], plaintiff saw Dr. Calabrese again and the doctor concluded as for work restrictions that plaintiff was "able to perform sedentary work" [R. 1217].   This work restriction was repeated on September 29, 2016 [R. 1205, 1194], November 7, 2016 [R. 1192, 1181], December 19, 2016 [R. 1179, 1168, 34], and January 30, 2017 [R. 1903, 1892] (see id. at 9, 10).

The ALJ gave these findings partial weight, adopting the finding that plaintiff could perform sedentary work [R. 35]. The ALJ found these opinions were supported by plaintiff's combined physical impairments as a whole, his treatment history, and plaintiff's reported daily activities (such as preparing simple meals and tending to light housework) [R. 35-36]. More weight was not given because Dr. Calabrese did not offer further functional limitations and was "contradicted by his overly restrictive medical source statement just a few months later" [R. 36].

On February 22, 2017, Dr. Calabrese issued that so-called overly restrictive medical source statement, a "Treating Source Statement—Physical Conditions" report [R. 1888, 35]. There, Dr. Calabrese diagnosed plaintiff with cervical disc herniation, thoracic disc herniation, lumbar disc herniation, left ankle/foot sprain or strain, right shoulder rotator cuff tear and impingement, right ulnar nerve neuropathy, and right cubital tunnel syndrome [R. 1888, 35]. The doctor found plaintiff would be off task for 25% of a typical work day [R. 1888] and would miss two days a month due to his impairments and treatment [R. 1888, 35]. He also found that plaintiff could occasionally lift and carry 10 pounds and frequently less than 10 pounds [R. 1889, 35]. Plaintiff could occasionally walk or stand and sit for eight hours in a workday and opined that plaintiff could never climb, balance, stoop, kneel, crouch, crawl, or be exposed to unprotected heights or moving mechanical parts, or operate a motor vehicle [R. 1889, 1890-91, 35]. Plaintiff could never reach overhead, reach generally, handle, finger, fee, push or pull with either his dominant left hand or his right hand [R. 1890, 35] or use foot controls with either foot [R. 1890, 35]. Dr. Calabrese also found that plaintiff could not work in humidity, wetness, with pulmonary irritants, extreme heat or cold, or vibrations [R. 1891, 35].

The ALJ gave little weight to this February 2017 opinion because it was "overly restrictive" as compared with earlier opinions [R. 36]. Dr. Calabrese did not explain the more restrictive functional limitations but attached the January 30, 2017, medical report [R. 1892] which itself concluded plaintiff could perform sedentary work [R. 1903, 36]. Given these restrictions and inconsistencies with prior opinions, the ALJ gave this last opinion little weight [R. 36].

The ALJ thus found that plaintiff had a residual functional capacity to perform sedentary work, except occasionally handle, finger, reach overhead bilaterally, and operate foot controls; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; occasionally work at unprotected heights or around moving mechanical parts; and never climb ladders, ropes, or scaffolds [R. 30].

The ALJ found that plaintiff was unable to perform past relevant work as a bus driver [R. 36-37]. With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as call out operator and surveillance systems monitor, both sedentary unskilled work [R. 37]. As a result, the ALJ held that plaintiff was not disabled [R. 38].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'"   Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.      General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person

is disabled when unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental

impairment or impairments are of such severity that [he or she] is not only unable to do [his or

her] previous work but cannot, considering [his or her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy . . . ."

42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the

claimant from returning to his or her previous type of employment.   Berry v. Schweiker,

675 F.2d 464, 467 (2d Cir. 1982).   Once this burden has been met, "the burden shifts to the

[Commissioner] to prove the existence of alternative substantial gainful work which exists in the

national economy and which the plaintiff could perform."   Id.; see also Dumas v. Schweiker,

712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must

employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

II.     Treating Physician Rule, Pre-March 2017

Plaintiff's claims predate changes to the treating opinion regulations.   The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 (2017), such as this one.   On March 27, 2017, the current version of the SSA regulations eliminates the treating physician's rule for applications filed on or after that date, 20 C.F.R. §§ 404.1520c, 416.920c.   E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claims filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013).   The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is **well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence**.   See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion.   Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion."   Halloran, 362 F.3d at 33.   "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.) (emphasis added).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff argues that the ALJ improperly rejected the treating source opinion by not applying the treating source rule, 20 C.F.R. § 404.1527 (Docket No.8, Pl. Memo. at 1, 19-26). Specifically, the ALJ allegedly rejected the opinion of Dr. Michael Calabrese [R. 1888, Feb. 22, 2017, R. 35], that plaintiff would need to take off 25% of the time, miss two days per month and not be able to reach over head or climb stairs (among other physical restrictions) [R. 1888-91] (id. at 19, 20-24). The ALJ gave little weight to this February 2017 opinion because it was inconsistent with Dr. Calabrese's prior opinion that plaintiff could perform sedentary work [R. 34, 36, 1168]. The ALJ gave partial weight to the December 2016 opinion that perform sedentary work [R. 34].

Plaintiff also argues that the ALJ relied upon his lay opinion and not medical opinions in reaching the residual functional capacity (Docket No. 8, Pl. Memo. at 26-30).

Plaintiff finally argues that this case should be remanded to clarify Dr. Adler's medical opinions (Docket No. 8, Pl. Memo. at 30). This case, however, has no Dr. Adler identified in the record. Plaintiff does argue that instead of rejecting Dr. Calabrese's opinion, that Dr. Calabrese should have been re-contacted to clarify his opinions (id. at 23, 24).

At issue is the ALJ's consideration of Dr. Calabrese's opinions. Sedentary work is defined in Social Security regulations as the ability to lift no more than 10 pounds at a time and occasionally lifting such items as docket files, ledgers, and small tools, with walking and standing required only occasionally, 20 C.F.R. § 404.1567(a). The one functional statement by Dr. Calabrese, from February 2017, found that plaintiff could occasionally lift 10 pounds,

frequently lift less than 10 pounds and could occasionally walk and stand and could sit for eight hours in an eight-hour workday [R. 1889]. Dr. Calabrese's opinions of plaintiff from February 2016 (including summaries of plaintiff's treatment back to March 2014) to January 2017 consistently found that plaintiff could perform sedentary work (even factoring in left arm surgery in February 2016). None of them registered the limitations noted in the February 2017 statement, including the attached January 2017 report; plaintiff reported during the January 30, 2017, examination that he experienced pain and loss of enjoyment in performing household duties, increased pain, restricted movement, and weakness with lifting, bending, walking, and sitting [R. 1892]. Plaintiff made similar complaints in his December 2016 examination [R. 1168], despite Dr. Calabrese's opinion for both examinations that plaintiff still could perform sedentary work [R. 1179, 1903].

A treating physician's opinion deserves controlling weight it is "not inconsistent with other substantial evidence," see 20 C.F.R. § 404.1527(c)(4), see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999) (Docket No. 19, Pl. Reply Memo. at 1). Here, Dr. Calabrese's February 2017 assessment is inconsistent with prior opinions without a clear reason for the divergence. As noted by the ALJ [R. 36], that February 2017 opinion relied upon the January 2017 examination report which found that plaintiff could perform sedentary work [R. 1903, 1889-91 (repeated reference to attached January 2017 medical report)]. While Dr. Calabrese may have noted the numerous abnormalities plaintiff notes in his brief (Docket No. 8, Pl. Memo. at 21), the doctor then found that plaintiff nevertheless could perform sedentary work despite these conditions (including left arm surgery in the first quarter of 2016). The ALJ was not obligated to re-contact Dr. Calabrese to eliminate any confusion between his work

restriction opinion and his medical findings. There is no gap in the record to necessitate contacting Dr. Calabrese again (Docket No. 15, Def. Memo. at 21). The ALJ also could properly disregard medical opinions that reached the ultimate determination of disability since that determination rests with the Commissioner, 20 C.F.R. § 404.1527(d)(1). Finally, the ALJ did not reject all medical opinions to render his lay opinion. Save for the aberrant February 2017 report, the ALJ relied upon the consistent opinion of Dr. Calabrese that plaintiff could perform sedentary work.

Therefore, plaintiff's motion (Docket No. 8) for judgment is **denied** and defendant's cross-motion (Docket No. 15) for judgment on the pleadings is **granted**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 8) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 15) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

_s/Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
January 7, 2020